UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:19-cv-00073(VLB) |
| | : | |
| ANTON JEPSEN | : | |
|     Defendant. | : | April 1, 2020 |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)

Before the Court is Anton Jepsen's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c). [Dkt. 30]. The Government does not object to the Defendant's motion. [*Id*. at 1]. For reasons stated herein, the Court GRANTS Defendant's motion.

## Background Facts

Mr. Jepsen was arrested in Manhattan in August 2015, following a DEA investigation into a drug trafficking operation that shipped methamphetamine from California to New York. [Dkt. 34 (PSR in *United States v. Jepsen*, NO. 1:15-cr-741-02 (WHP) ¶¶ 11-15]. Judge William H. Pauley III of the Southern District of New York sentenced him to 18 months of incarceration, followed by a five-year term of supervised release. [Dkt. 1 (Copy of Crim. J)]. Under the mandatory terms of supervised release, Mr. Jepson was prohibited from unlawfully using any controlled substance. [*Ibid*.]. Judge Pauley also imposed special conditions

1

requiring Mr. Jepsen to participate in an approved outpatient drug treatment program and participate in weekly therapy sessions. [*Ibid*.]. His supervised release commenced on June 1, 2017, and he began residing with his sister in this District shortly thereafter. [Dkt. 6 (Violation Report) at 2].

On March 13, 2019, the Court accepted the requested transfer of jurisdiction over Mr. Jepsen's supervised release from the Southern District of New York. [Dkt. 1]. Despite extensive outpatient and impatient drug treatment, Mr. Jepsen continued to use methamphetamine. [Dkt. 6 (Violation Report)]. He tested positive for illicit drugs on six occasions in 2019. [*Id*. at 2]. During a meeting with the U.S. Probation Officer and his counselor, Mr. Jepsen stated that he believed that treatment was a "waste of time" and that methamphetamine is a "medication" for him. [*Id*. at 5]. The Defendant was arrested pursuant to a warrant on August 28, 2019 and stipulated to his detention. [Dkt. 10 (Detention Hearing)]. The Court granted the Defendant's requested thirty-day continuance of the violation hearing in order to stabilize his health and medication regimen while detained. [Dkt. 17 (Order Granting Def. Mot. for Cont.)].

During the November 2019 violation hearing, Mr. Jepsen admitted to violating the terms of supervised release. [11/28/2019 hearing at 10:08:49-10:09:15]. Mr. Jepsen continued to normalize his drug use during the Court's colloquy, expressing that he used less than others and that he was self-medicating. Mr. Jepsen interrupted the Court as it prepared to impose the sentence. [*Id*. at 10:23:20-10:26:30]. The Court then heard from defense counsel, who explained that treatment of Mr. Jepsen's serious chronic health conditions was interrupted by

2

medication delays and substitutions while incarcerated. [*Id.* at 10:26:26-10:28:37]. The Court provided Mr. Jepsen the opportunity to present medical records and directed the parties to jointly request another hearing. [*Id.* at 10:31:08-10:31:40].

At the next proceeding, Mr. Jepsen presented additional information about his medical conditions. [02/11/2020 hearing at 11:44:19-11:53:10]. The Court imposed a guideline sentence of nine months incarceration with no supervised release to follow. [*Id.* at 12:14:45-12:15:31]. The Court noted that the sentence engendered respect for the law and was in Mr. Jepsen's best interest by giving him the greatest chance to stabilize himself and to prevent a cycle of violation and incarceration. [*Id.* at 12:12:06-12:16:43].

On March 26, 2020, Mr. Jepsen moved for compassionate release pursuant to 18 U.S.C. § 3582(c). [Dkt. 30]. According to the Defendant's motion, Mr. Jepsen would have served the remainder of his sentence at the Donald W. Wyatt Detention Facility ("Wyatt"), rather than a Bureau of Prison's facility. [*Id.* at 2]. Mr. Jepsen requested compassionate release because of his risk of serious complications and death should he contract COVID-19 based on his specific health conditions, but the warden at Wyatt denied the request because Wyatt is not a BoP facility. [*Ibid.*]. Through counsel, Mr. Jepsen requested release from the BoP directly, but the BoP's senior counsel at the Designation and Sentence Computation Center denied the request because Mr. Jepsen is not incarcerated at a BoP facility. [Dkt. 32 (Def. Suppl. Mem.) at 1]. By the Court's calculation, the Defendant would be released from custody on May 28, 2020.

3

## Legal Standard

The First Step Act of 2018 amended the procedural requirements for a motion to reduce sentence to provide compassionate release. 18 U.S.C. § 3582(c)(1)(A). Because of this amendment, a defendant may move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the BOP could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid.*; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Ibid.*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As other courts have recognized, the U.S.

Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *Ebbers*, 2020 WL 91399, at *4. The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

(A) Medical Condition of the Defendant.--
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.>
[or]
  (ii) The defendant is--
      (I) suffering from a serious physical or medical condition,
      (II) suffering from a serious functional or cognitive impairment, or
      (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A)

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons.

The defendant bears the burden of showing that he is entitled to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.

## Analysis

First, the Court finds that Mr. Jepsen's motion is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) because he exhausted available appeals of the administrative denial of his request for compassionate release. Mr. Jepsen is

5

essentially caught in a "Catch-22"; neither the warden at Wyatt nor the BoP will consider his request because of his designation to Wyatt, a non-BoP facility. Accordingly, the Court considers the merits of his motion.

On March 13, 2020, the President of the United States declared a national state of emergency to slow the infectivity rate and treat those affected by a novel coronavirus known as SARS-CoV 2 ("COVID-19"). *Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Mar. 13, 2020. COVID-19 is an emerging, rapidly evolving public health crisis. In response to public health officials' warnings about the infectivity of the virus and the risk of severe complications, dramatic and widespread "social distancing" measures have been imposed by all levels of government and branches nationwide. *See, e.g.*, D. Conn. Gen. Order In Re: Court Operations Under Exigent Circumstances Created by COVID-19 (Mar. 24, 2020)(continuing all in-person proceedings through May 15, 2020, with limited exception); *see also* Conn. Executive Order 7(h)(Mar. 20, 2020) (general "work-from-home" order for all non-essential businesses).

At last review, COVID-19 has killed 69 Connecticut residents. Eliza Fawcett and Alex Putterman, *Daily coronavirus updates: 'Horrible' month ahead as Connecticut's COVID-19 death toll reaches 69, hospitalizations rise to 608*, HARTFORD COURANT, Mar. 31, 2020. In Rhode Island, where Wyatt is located, there have been eight deaths. Tom Mooney, *An analysis predicts 259 deaths in R.I. from coronavirus. State officials are expecting more.*, PROVIDENCE JOURNAL, Mar. 31, 2020. The BoP has reported the first COVID-19 related inmate death in custody; a 49-year

old inmate at a low security prison in Louisiana with long term medical conditions identified as risk factors. Press Release, Bureau of Prisons, Inmate Death at FCI Oakdale I (Mar. 28, 2020), available at https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf

The U.S. Centers for Disease Control and Prevention has advised that some populations are at an especially heightened risk of severe complications and death if they contract COVID-19, particularly, the elderly and those with certain chronic medical conditions. *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019-COVID*, *People who are at higher risk for severe illness,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed March 31, 2020).

A review of Mr. Jepsen's medical records from Wyatt confirms that he suffers from three of the chronic conditions considered by the CDC to be risk factors for severe complications. [Dkt. 35 (Sealed Med. Records) Ex. B]. The medical records and laboratory testing reflect significant weight gain, some difficulty controlling and managing his chronic conditions, and that he is immunocompromised. [*Id.* at 28, 31].

Strictly speaking, none of Mr. Jepsen's conditions fall within the existing guidance from the U.S. Sentencing Commission because he is not terminally ill, nor has he lost the ability to provide self-care in a correctional setting. U.S.S.G. § 1B1.13. Mr. Jepsen argues that: (1) as a general matter, the Guidelines are advisory

only, *United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. [Dkt. 31 (Def. Suppl. Mem) at 14]. The Court agrees and concludes that the Court may determine that "extraordinary and compelling" reasons may exist beyond those delineated by the commentary to U.S.S.G. § 1B1.13. *See United States v. Cantu,* No. 1:05-CR-458-1, 2019 WL 2498923, at *3-5 (S.D. Tex. June 17, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019).

In *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020), Judge Meyer noted that, "according to an inquiry through the U.S. Marshals Service of the Wyatt facility, there are more than 700 prisoners housed at Wyatt of which more than 500 prisoners are housed in two-person cells and more than 150 prisoners are housed in more-than-two-person cells. There are between 20 to 70 persons at one time in general dayroom areas, and up to 15 persons are allowed in the recreation area at one time." Judge Meyer then concluded that the conditions of confinement at Wyatt were not compatible with the prescribed preventative measures for COVID-19. *Ibid*. Mr. Fellela was in the highest risk group of death given his age (62), his weight (300 pounds), diabetes, and other ailments. *Ibid*. Based on these conclusions and the availability of other safeguards, Judge Meyer ordered the release of the pre-trial detainee. *Id*. at 2.

By contrast, in *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020), Judge Bolden denied a defendant's post-conviction motion for compassionate release based in part on risk of complications if the defendant contracted COVID-19. The Government opposed

defendant's motion. *Id.* at 3. The defendant had not satisfied the administrative review requirement. *Ibid.* On the merits, the court concluded that the defendant had not shown that "the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno." *Ibid.*

Although Mr. Jepsen is before the Court as a sentenced offender and not a pre-trial detainee, his current predicament is more akin to *Fellela* than *Gileno.* First, like Mr. Fellela, he is detained at Wyatt. Like Mr. Fellela, Mr. Jepson has multiple risk factors for severe complications from COVID-19, rather than the more generalized concerns raised by Mr. Gileno. In contrast to *Gileno*, Mr. Jepsen satisfied the procedural requirements to bringing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Unlike *Gileno*, the Government consents to Mr. Jepsen's release.

Unfortunately, the existence of chronic health conditions is widespread among the inmate population in the U.S. prison and jail system. A Bureau of Justice Statistics report recently found that 40% of jail and prison inmates have a current chronic medical condition. Laura M. Maruschak, Marcus Berzofsky, & Jennifer Unangst, U.S. Dep't of Just., Bureau of Just. Statistics., *Medical problems of state and federal prisoners and jail inmates: 2011-2012* at 1-22, 2 (Feb. 2015) available at https://www.bjs.gov/index.cfm?ty=pbdetail&iid=5219. An inmate's current diagnosis of a chronic condition does not constitute an "extraordinary and compelling" basis for compassionate release, both under the U.S. Sentencing Commission guidance and when these terms are read in the plain sense.

9

But Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release. The Court finds that the totality of the circumstances specific to Mr. Jepsen constitute "extraordinary and compelling" reasons to grant compassionate release. *See also United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (granting a consent motion to substitute the remaining four months of incarceration for home confinement for immunocompromised inmate at risk of severe complications from COVID-19)

In reaching this conclusion, the Court also reviewed the PSR from the underlying conviction. [Dkt. 34 (PSR in *United States v. Jepsen*, NO. 1:15-cr-741-02 (WHP))]. The PSR reflects that prior to his federal drug arrest, Mr. Jepsen's only contact with the criminal justice system consisted of driving under the influence convictions, none of which resulted in a criminal history point under the guidelines. The Court is satisfied that releasing Mr. Jepsen from custody eight weeks before his scheduled release date does not create any appreciable danger to the community.

### 18 U.S.C. § 3553(a) factors

Having determined that Mr. Jepsen has carried his burden to establish "extraordinary and compelling" reasons to support compassionate release, the

Court now considers whether a sentence of time served satisfies that 18 U.S.C. § 3553(a) sentencing factors.

First, a sentence of time served would still fall within the advisory guideline range for a Grade C violation and a Criminal History category of I. §7B1.4 (3-9 months' incarceration).

Second, the Court finds that a sentence of time served would still reflect the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. § 3553(a)(2)(A). Despite his earlier protest to the contrary, Mr. Jepsen is a drug addict. His history of oppositional behavior caused him to squander repeated attempts to provide him necessary and court ordered drug and psychological treatment. His disrespect for the Court during the November 2019 hearing suggested continued disrespect for the law. However, the Court finds that, considering the changed circumstances, a period of incarceration of time served reflects the severity of Mr. Jepsen's conduct and is a just punishment. Mr. Jepsen has had enough time in incarceration to consider his actions and his resultant life circumstances.

Third, the additional period of incarceration was also intended to provide Mr. Jepsen with needed medical stabilization and an opportunity to establish a post-release support plan and network. Here too, the circumstances have changed, and incarceration is no longer the most effective way to deliver this necessary support. § 3553(a)(2)(D). Mr. Jepsen stated that he will reside with a friend in the Waterbury, Connecticut area. [Dkt. 31 (Def. Mem. in Supp) at 17]. The Court notes that Mr.

Jepsen's friend attended both court hearings. Defense counsel avers that his friend contacts him regularly regarding Mr. Jepsen's well-being. *Id*. Given the consistency of support, the Court finds that Mr. Jepsen will have a support system to provide him adequate assistance upon his release from custody.

Accordingly, the Court finds that a sentence of time served is sufficient, but not greater than necessary, to achieve the statutory aims of sentencing. § 3553.

## Conclusion

Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is GRANTED. For the protection of the public, the U.S. Marshals Service is directed to instruct the warden at Wyatt that Mr. Jepsen is to be screened for potential COVID-19 infection prior to his release by whatever means are currently in place to screen staff and other essential visitors entering Wyatt, if any. If Mr. Jepsen has a body temperature or other indicator deemed by Wyatt to reflect a possible COVID-19 infection, that condition must be promptly reported to the Court by defense counsel. Mr. Jepsen is responsible for securing his own transportation upon release.

Lastly, the Court encourages Mr. Jepsen to continue his drug and psychological treatment when released from custody. It is the Court's earnest hope that Mr. Jepsen will return to be a productive member of society. In the Court's observation, he benefited from the support and goodwill of personal and professional networks alike. The Court is confident that Mr. Jepsen has the necessary tools to succeed, should he choose to do so.

                                                IT IS SO ORDERED.

                                                _____/s/_____
                                                Hon. Vanessa L. Bryant
                                                United States District Judge

**Dated this day in Hartford, Connecticut: April 1, 2020**